1321·16

No. PD-1321-16

IN THE

COURT OF CRIMINAL APPEALS

FOR THE

STATE OF TEXAS

ORIGINAL

DAVID BARRON, APPELLANT

VS.

THE STATE OF TEXAS, APPELLEE

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 23 2016

Abel Acosta, Clerk

PETITION FOR REVIEW OF THE

EIGHTH COURT OF APPEALS

JUDGMENT IN No. 08-12-00184-CR

AFFIRMING CONVICTION IN CAUSE No. 20120D01101

FROM THE 210TH JUDICIAL DISTRICT COURT

OF EL PASO COUNTY, TEXAS

FILED IN
COURT OF CRIMINAL APPEALS

DEC 23 2016

Abel Acosta, Clerk

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

COMES NOW DAVID BARRON, HEREINAFTER REFERRED TO AS PETITIONER, WHO PETITIONS THE COURT TO REVIEW THE JUDGMENT AFFIRMING HIS CONVICTION IN CAUSE No. 08-12-00184-CR.

# TABLE OF CONTENTS

TABLE OF CONTENTS ———————————— i

INDEX OF AUTHORITIES ———————————— ii

STATEMENT REGARDING ORAL ARGUMENT ————————— 1

STATEMENT OF THE CASE ———————————— 1

STATEMENT OF PROCEDURAL HISTORY OF THE CASE —— 1-2

GROUND FOR REVIEW ———————————— 2

THE EIGHTH COURT OF APPEALS HAS RENDERED A DE-
CISION IN CONFLICT WITH APPLICABLE DECISIONS OF
THE TEXAS COURT OF CRIMINAL APPEALS WHEN IT HELD
THAT THE TRIAL COURT'S JURY CHARGE DID NOT COM-
MENT ON THE WEIGHT OF THE EVIDENCE.

STATEMENT OF FACTS ———————————— 3-8

ARGUMENT ———————————— 9-13

CONCLUSION AND PRAYER FOR RELIEF ——————— 13-14

WAIVER OF SERVICE ———————————— 14

APPENDIX: EIGHTH COURT OF APPEALS' OPINION ——— 15

# Index of Authorities

State Cases:

Brown v State, 122 S.W. 3d 794 (Tex. Crim. App. 2003) _____ 9

Ward v State, 72 S.W. 3d 413 (Tex. App. —
    Fort Worth 2002) _____ 10

Walters v State, 247 S.W. 3d 204 (Tex.
    Crim App. 2007) _____ 11-12

Penal Codes:

Texas Penal Code Ann. 22.02 _____ 12

Miscellanious:

Black's Law Dictionary _____ 10

## Oral Argument

The Petitioner, David Barron, requests oral argument due to the nature of the issues and of the underlying facts.

## Statement of the Case

The 210th District Court's comment on the weight of the evidence denied the petitioner the right to a fair and impartial trial. The Court of Appeals for the Eighth District of Texas failed to consider the definition of "Direct Evidence" in its entirety, and the fact that Appellate courts have found "Eyewitness" testimony to be the most unreliable evidence in a jury trial before rendering an opinion.

## Statement of Procedural History of the Case

Petitioner, David Barron, was charged by indictment, February 28, 2012, with aggravated assault with a deadly weapon. The indictment specifically alleged that on December 1, 2011 that the petitioner threatened Robert Sierra with imminent bodily injury with a deadly weapon, to wit, a maroon Silverado.

On the 24th day of April, 2012, Petitioner was found guilty by a jury of the offense of Aggravated Assault with Deadly Weapon. On that same day the petitioner was sentenced by the trial court to serve twelve (12) years in the

1

Intitutional Division of the Texas Department of Correc-
tions and to pay $231 in court costs.

On May 15, 2012 the Petitioner filed a Motion for New
Trial. After a Motion for Reconsideration and numer-
ous hearings, the Motion for New Trial was granted. On
July 26, 2012 the State filed thier notice of appeal to
the granting of the motion. Ultimately, on February 7,
2014, the Court of Appeals for the Eighth District revers-
ed the trial court's grant of the motion for new trial. On
July 23, 2014, the Texas Court of Criminal Appeals denied
Petitioner's petition for Discretionary Review.

The Court of Appeals for the Eighth District of Texas
reinstated the Petitioner's direct appeal in this case, and
on August 12, 2016 issued an Opinion affirming Peti-
tioner's conviction.

The Petition for Discretionary Review is due on or before
January 17, 2017 . The opinion of the Eighth Court of
Appeals herein (copy attached) will be cited as "Opinion".

<u>Ground for Review</u>

The Eighth Court of Appeals has rendered a decision
in conflict with applicable decisions of the Texas Court
of Criminal Appeals when it held that the trial court's
jury charge did not comment on the weight of the evi-
dence.

2

## STATEMENT OF FACTS

On December 1, 2011, Officer Joel Holguin was dispatched on a hit and run accident[1] that took place on Link Street in El Paso County, Texas. (R.R.4, P.95) He was advised that a maroon or red Chevrolet Silverado truck was involved in a hit and run accident. (R.R.4, P.99) He observed the parked car, a silver SUV, on Link Street that had been hit. (R.R.4, P.96) The Silverado hitting the SUV was not the basis of the charges.

He met with people outside the vehicle at the scene. As a result of that meeting he began to pursue a green Yukon and initiated a felony stop of that Yukon on North Loop in El Paso County. He believed its occupants were involved in that hit and run accident of the parked vehicle. (R.R.4, Pp. 99-100) The Yukon initially stopped for the officer and then drove off with the officer in pursuit. That vehicle was located shortly thereafter in a ditch outside a shopping center. It had crashed into that ditch. (R.R.4, Pp. 100-102) Mr. Barron was arrested outside the Yukon, the other occupant, its driver, was never located although the police did look for him. (R.R.4, Pp. 102-103, 107-108)

## SHOW UP - 'ONE-ON-ONE' IDENTIFICATION

After being located as the passenger in a Yukon, Mr.

---

1. The choice of words is attributable to the state's witness, not the author of this brief.

3

BARRON WAS IDENTIFIED AS THE DRIVER OF THE MAROON SIL-VERADO THAT HAD BEEN INVOLVED IN THE HIT AND RUN ACCIDENT. HE WAS IDENTIFIED AS THE RESULT OF A SHOW-UP IDENTIFI-CATION. HE WAS SPOTLIGHTED, AT NIGHT BY A POLICE VEHICLE. THE WITNESS IDENTIFIED HIM FROM 90 FEET AWAY WITH THE AID OF BINOCULARS. NO PHYSICAL LINE UP OR PHOTOGRAPHIC ARRAY WAS DONE. THE WITNESS WAS NOT GIVEN THE OPTION OF IDENTIFYING ANY OTHER POSSIBLE SUSPECTS. (R.R.4 Pp. 111-115)

## RACE

PRIOR TO WHAT THE RESPONDING POLICE OFFICER DESCRIBED AS A "HIT AND RUN ACCIDENT", (R.R.4 P.95), A MAROON SIL-VERADO TRUCK AND A NINJA MOTORCYCLE HAD BEEN TRAVEL-ING AT HIGH RATES OF SPEED DOWN NORTH LOOP, A STREET IN EL PASO COUNTY, TEXAS. (R.R.4 P.36) ROBERT SIERRA WAS DRIV-ING THE NINJA MOTORCYCLE. (R.R.4 P.19)

SHORTLY THEREAFTER, THAT EVENING, STEPHANIE ROMO WENT OUTSIDE BECAUSE SHE HEARD A LOUD BOOM OR CRASH AND HEARD HER NEIGHBOR ROBERT SIERRA REVVING THE ENGINE TO HIS POW-ERFUL AND FAST MOTORCYCLE. (R.R.4 P.76-77, 65) ROMO WAS FAMILIAR WITH THE SOUND OF HER NEIGHBOR ROBERT SIERRA'S BIKE (R.R.5, P.76-77) BECAUSE HE FREQUENTLY REVVED IT AS A SIGNAL FOR HER TO GO OUT AND SPEND TIME WITH HIM. (R.R.4, P.83) THE CRASH SHE HEARD WAS THE HIT AND RUN ACCI-DENT THAT OFFICER HOLGUIN WAS DISPATCHED ON. (R.R.4, Pp. 31, 95)

THERE WAS TESTIMONY FROM EACH OF THE OTHER WITNESSES

4

THAT THEY WERE INSIDE AND CAME OUT WHEN THEY HEARD THE SOUND OF THE REVVING ENGINE OF THE NINJA AND THEN THE SOUND OF A CRASH. (R.R.4, P.16, 46 AND 56) THE WITNESSES A-GREED THAT THE SOUND OF THE CRASH WAS AN AUTOMOBILE ACCI-DENT — A MAROON TRUCK CRASHING INTO A SILVER SUV PARKED ON LINK STREET. (R.R.4, P.31) THAT WAS THE HIT AND RUN ACCI-DENT THAT OFFICER HOLGUIN WAS DISPATCHED ON. (R.R.4, P.95)

ROBERT SIERRA TESTIFIED THAT HE WAS DRIVING ON NORTH LOOP IN EL PASO COUNTY, TEXAS, ON HIS NINJA MOTORCYCLE. HE SAW HEADLIGHTS APPROACHING QUICKLY BEHIND HIM IN HIS REARVIEW AND SIDE MIRRORS. (R.R.4, P.21) HE CHANGED LANES AND THAT THE HEADLIGHTS BELONG TO A MAROON TRUCK. (R.R.4, P.21, 22) SI-ERRA CLAIMED THAT THE DRIVER OF THE TRUCK LAUGHED AT HIM AND SWERVED INTO HIS LANE. (R.R.4, P.22) SIERRA PULLED INT TO THE EMERGENCY LANE AND THEN BACK INTO THE RIGHT LANE. (R.R.4, P.26) THE TRUCK SWERVED INTO THE RIGHT LANE AGAIN BUT MUCH LESS THAN THE FIRST TIME. (R.R.4, P.26-27) SIERRA PASSED THE TRUCK BY GOING IN BETWEEN THE TRUCK AND A-NOTHER VEHICLE EFFECTIVELY CREATING HIS OWN LANE TO DO SO. (R.R.4, PP. 27, 41) SIERRA WAS TRAVELING AT AN EXTREME-LY HIGH RATE OF SPEED — IN EXCESS OF THE POSTED SPEED LIMIT OF 45 MILES PER HOUR IN ORDER TO PASS THE TRUCK AND ITS OCCU-PANTS. (R.R.4, P.40-41) ROBERT SIERRA CHOSE TO SPEED UP AND OVERTAKE THE TRUCK ON HIS NINJA RATHER THAN EITHER STOP-PING OR PULLING OFF OF THE ROAD. (R.R.4, P.40)

THE NINJA WAS TRAVELING SO QUICKLY THAT SIERRA AL-MOST DROPPED IT AT ONE POINT — WHEN MAKING A TURN INTO

5

Link Street. (R.R.4.P.28) The Silverado passed the Ninja on Link Street. In his haste to overtake the truck, Sierra hit a car stopped at a stop sign on Link Street. Sierra ran the stop sign, passed the car without stopping, in order to catch up with the truck. (R.R.4.P.44)

Sierra saw the truck hit a parked SUV. That collision created a loud crash. Sierra then jumped the curb to bring his motorcycle onto the sidewalk, and he then revved his motorcycle which brought his family out of the house. (R.R.4.P.45) The truck hit the parked silver SUV but did not hit Sierra or the Ninja motorcycle. (R.R.4.P.45)

Robert Sierra's family did not come out of the house until after the truck hit the parked vehicle. (R.R.4.P.46) Sierra and his family left thier home in different vehicles and went looking for the truck. (R.R.4.P.46) The witnesses located the truck, without the participation of law enforcement at a service station. Two men were standing outside of it — one of whom he identified as David Barron and the other individual he could not identify. (R.R.4.P.47)

The maroon Silverado truck was owned by Martha Barranco. (R.R.4.P.118) She had loaned that vehicle to her husband, Antonio Barranco. She had given Antonio permission to use that vehicle, and the keys, on December 1, 2011. (R.R.4.P.118) Her husband frequently used that vehicle. (R.R.4.P.119) Antonio was injured as a result of the accident. (R.R.4.P.119) She never saw David Barron drive her vehicle and he did not have her permission to do so. (R.R.4.P.119)

6

At the punishment phase it was established that although Barron had some prior criminal convictions (R.R. 5. P.46), there was another side to him. He was actively seeking employment: he lived with his sisters and was extremely helpful to them, and to his niece. (R.R.5. P.53.55) He was greatly affected by the recent death of his mother and had started drinking more heavily. (R.R.5. Pp.52.55) His father lived in Juarez and would have testified but was unable to cross into the United States legally. (R.R.5. P.53)

## Motion for New Trial

A motion for new trial was filed. (CR. P.93-99) At the hearing on the motion, a transcript comprised of approximately 24 pages, the State remained largely mute only announcing "ready" (R.R.6. P.4) and announcing that they had no questions for the defense witness. (R.R.6. P.20) In sharp contrast, during the hearing the court consistently fired questions at defense counsel, interrupted the testimony (R.R.6. P.14), berated her (R.R.6. P.5-12), and contradicted the testimony. (R.R.6. P.6-7) Notably the litigated issue was defense counsel's trial stragety (R.R.6. P.13-14) and and events occurring during voir dire. The events during voir dire are more clearly reflected in the reporter's record than by testimony at the hearing. (R.R.6. P.16)

The reporter's record clearly reflects that when individual members of the venire were brought up to the trial court's bench for questioning, the lawyers were

7

PRESENT BUT BARRON WAS EXCLUDED OVER OBJECTION. IT WAS ESTABLISHED BY TESTIMONY AT THE MOTION FOR NEW TRIAL HEARING THAT THIS ACTION DEFEATED DEFENSE TRIAL STRAGETY. (R.R.6.PP.13-14) IT WAS ALSO ESTABLISHED THAT BARRON WAS NEVER DISRUPTIVE DURING THE PROCEEDINGS AND THAT WAS NOT THE REASON FOR HIS EXCLUSION. (R.R.6.P.16-17) BARRON WAS DIRECTED TO TAKE HIS SEAT (AND AWAY FROM THE INDIVIDUAL QUESTIONING OF MEMBERS OF THE VENIRE TO DETERMINE EXEMPTIONS AND QUALIFICATIONS) IN FULL VIEW OF THE ENTIRE VENIRE PANEL ~ INCLUDING THE 12 JURORS WHO ULTIMATELY HEARD HIS CASE. (R.R.6.P.18) THE TESTIMONY ESTABLISHING THAT BARRON WAS NOT DISRUPTIVE, THAT HE WAS DIRECTED TO SIT DOWN IN FRONT OF THE JURORS, AND THAT THE DEFENSE TRIAL STRATEGY TO HUMANIZE BARRON BY HAVING HIM ACTIVELY PARTICIPATE IN VOIR DIRE WAS DEFEATED, WAS NEVER CONTRADICTED.

THE INTERROGATION OF INDIVIDUAL MEMBERS OF THE PANEL AS TO QUALIFICATIONS AND EXEMPTIONS TOOK PLACE AT THE BENCH IN FRONT OF THE VENIRE. FIFTEEN JURORS WERE QUESTIONED INDIVIDUALLY BY THE COURT. NINE WERE EXCUSED AND ONE CHALLENGE FOR CAUSE WAS MADE. THIS WAS CONDUCTED OUTSIDE BARRON'S PRESENCE. (R.R.13.P.20-25,27-33)

IN THE BRIEFS LITIGATING THE STATE'S APPEAL OF THE TRIAL COURT'S GRANT OF DEFENSE MOTION FOR NEW TRIAL IT IS CONCEDED THAT THE COURT HAD ABANDONED ITS ROLE AS A NEUTRAL AND DETACHED MAGISTRATE OVER THE COURSE OF PRESIDING OVER MR. BARRON'S CASE. (STATE'S BRIEF AT 63, APPELLEE BRIEF AT 58-66)

8

# ARGUMENT

The Eighth Court of Appeals has rendered a decision in conflict with applicable decisions of the Texas Court of Criminal Appeals when it held that the trial court's jury charge did not comment on the weight of the evidence.

## COMMENT ON THE WEIGHT OF THE EVIDENCE

... A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act being done or heard the words spoken.... Appellant's Brief ("Br") at 31.

## STANDARD OF REVIEW

In Brown v State, the Texas Court of Criminal Appeals set a three-point spectrum for determining when instructions constitute impermissible judicial comment on the weight of the evidence. See 122 S.W. 3d 794, 799-801 (Tex. Crim. App. 2003); Opinion ("Op.") at 14-15.

"On the far end of the 'improper-judicial-comment' scale is a comment or instruction that states a mandatory presumption and thereby violates due process." Id. at 799. "Somewhere in the middle of the ... scale are instructions on non-statutory presumptions or 'vehicles employed to review the sufficiency of evidence.'" Id. Finally, at the near end of the spectrum, a trial court cannot instruct on inferences that unreasonably draw attention to certain evidence.

9

*Id.* AT 800-01.

## DIRECT EVIDENCE

EVIDENCE THAT IS BASED ON PERSONAL KNOWLEDGE OR OBSERVATION AND THAT, IF TRUE, PROVES A FACT WITHOUT INFERENCE OR PRESUMPTION. 2. — A TERM SOMETIMES USED TO MEAN TESTIMONIAL EVIDENCE IN GENERAL, BUT SOMETIMES ALSO LIMITED TO APPLY ONLY TO TESTIMONY DIRECTLY ASSERTING THE FACT-IN-ISSUE. BLACK'S LAW DICTIONARY.

## MANDATORY PRESUMPTION

IN ANY GIVEN CASE THE JURY COULD MAKE ANY NUMBER OF REASONABLE INFERENCES. BUT WHEN THE TRIAL COURT, THE ONLY SOURCE OF LAW THE JURY HAS, PICKS OUT ONLY ONE SUCH INFERENCE AND INSTRUCTS THE JURY THAT ONE, THOUGH REBUTTABLE, IS A PRESUMPTION PROVIDED BY LAW, THE COURT GIVES THE FORCE OF LAW TO THAT ONE POSSIBLE INFERENCE. WARD v STATE, 72 S.W. 3d 413, 417 (TEX. APP. - FORT WORTH 2002); BR. AT 33.

WHETHER THE WITNESSES' TESTIMONY AS TO WHAT THEY SAW WAS ITSELF A QUESTION OF FACT AND THE PETITIONER WAS ENTITLED TO HAVE THE JURY DECIDE THE CREDIBILITY OF THE WITNESSES. HOWEVER, THE JURY CHARGE ASSUMES THE STATE'S TESTIMONY AS TRUE AND CREATES AN IRREBUTTABLE PRESUMPTION OF AN ISSUE THAT WAS HOTLY CONTESTED AT TRIAL. BR. AT 32.

On the other hand, the appellate court contends that the charge creates no mandatory presumption favor for the state because (a) "the charge never mentions the state," and (b) "the next paragraph of the change dispels any ambiguity over whether the word 'is' is simply used as a neutral copula ... or ... an implicit command". Op. at 15.

Contrary to the appellate court's belief the parties are readily identifiable. The paragraph at issue and the next paragraph cited by the appellate court do not mention the state. However, the appellate court easily discerned the state as a party. Id. at 16 (" . . . including a state's witness.")

Furthermore, the "next paragraph", Id., renders the previous paragraph simply unnecessary because it did not tell the jury anything it did not know and did not clarify the law for jury. Thus, the charge deprived the petition of the right to a fair and impartial trial.

## Non-statutory presumption

"All jury instructions relating to a Penal Code offense or defense must be statutorily based." Walters v State, 247 S.W.3d 204, 211 (Tex. Crim. App. 2007); Br. at 34-35. Niether the defendant nor the state is entitled to a special jury instruction if that instruction: "(1) is not grounded in the Penal Code, (2) is covered by the general charge to the jury, and (3) focuses the jury's attention on a specific type of evi-

11

DENCE .... In such a case, the non-statutory instruction would constitute a prohibited comment on the weight of the evidence." See, 247 S.W. 3d at 212'; Br. at 35.

The Eighth Court of Appeals held that "there is nothing in the charge that tells the jury to apply a non-statutory presumption". Op. at 16.

Conversely, the instruction is not contained in the Aggravated Assault Statute. See Texas Penal Code Ann. 22.02. Moreover, the instruction is covered by the general charge and common sense. Finally, the instruction focuses on and gives the judicial stamp of approval to a specific type of evidence — eyewitness testimony. Cf. Ante at 10 (stating that direct evidence is "testimonial evidence in general".) Thus, the petitioner was denied the right to a fair and impartial trial.

## Inferences that unreasonably draw attention to certain Evidence

The Eighth Court of Appeals concedes that the instruction at issue "improperly drew the jury's attention to certain types of evidence: namely, eyewitness and documentary evidence." Op. at 16. But found that the petitioner "cannot establish that this error harmed him." Op. at 17.

## Harm

The evidence in this case shows : (1) that there are 2 (two) suspects and that the alleged victim clearly saw

"TWO GUYS OUTSIDE THE TRUCK". REPORTER'S RECORD ("RR") IV AT 47". (2) THAT POLICE REPORTS SUPPORT THE FACT THAT THE IDENTIFICATION OF THE DRIVER COULD NOT BE MADE BECAUSE IT WAS TOO DARK. R.R. IV AT 86". (3) THAT POLICE OFFICERS CHASED TWO OCCUPANTS IN A TRUCK AND THAT ONE FLED WHILE THE PETITIONER STAYED. R.R. IV AT 105-107". (4) THAT THE SECOND OCCUPANT WAS NOT CAUGHT. R.R. IV AT 108". (5) THAT THE WITNESSES DID NOT IDENTIFY THE DRIVER. BUT. INSTEAD IDENTIFIED THE PETITIONER AS " THE PERSON THAT WAS IN THE VEHICLE", R.R. IV AT 113 (3-7)". (6) THAT THE PETITIONER WAS THE ONLY PERSON THE WITNESSES GOT TO LOOK AT TO IDENTIFY. R.R. IV AT 113-114". (7) THAT THE WITNESSES WERE NOT TOLD THE DRIVER HAD ESCAPED. INSTEAD. THEY WERE LED TO BELIEVE THAT THE DRIVER - PETITIONER - WAS CAUGHT. R.R. IV AT 48". (8) THAT THE IDENTIFICATION PROCESS WAS TAINTED. R.R. IV AT 48". AND". (9) THAT THE PETITIONER WAS NOT GIVEN THE KEYS TO THE TRUCK. NOR PERMISSION TO DRIVE IT. R.R. IV AT 118-119.

THE TRIAL COURT'S JURY CHARGE. IN THIS CASE. NEGATED THE AFOREMENTIONED DOCUMENTARY AND TESTIMONIAL EVIDENCE. THUS. DENYING THE PETITIONER THE RIGHT TO A FAIR AND IMPARTIAL TRIAL. AS WELL AS. THE VERDICT OF ACQUITTAL.

## CONCLUSION AND PRAYER FOR RELIEF

AS A RESULT. THE PETITIONER WAS HARMED IN THAT HE DID NOT GET A FAIR AND IMPARTIAL TRIAL AFFORDED BY THE TEXAS AND UNITED STATES CONSTITUTIONS.

16

FOR ALL THE REASONS SET FORTH, THE PETITIONER RESPECT-FULLY PRAYS THIS COURT GRANT REVIEW UPON THIS ISSUE AND UPON SUCH REVIEW, REVERSE THE CONVICTION AND REMAND THE CASE FOR A NEW TRIAL.

SUBMITTED THIS 14 DAY OF DECEMBER, 20 16.

David Barron

DAVID BARRON #1912803
ALFRED D. HUGHES UNIT
ROUTE 2, BOX 4400
GATESVILLE, TEXAS 76597

## WAIVER OF SERVICE

THE PETITIONER, DAVID BARRON, RESPECTFULLY REQUESTS A WAIVER OF SERVICE UPON THE STATE. THE PETITIONER DOESN'T HAVE FUNDS, SUFFICIENT SUPPLIES, OR ACCESS TO SERVICES TO MAKE COPIES.

## INMATE DECLARATION

I, DAVID BARRON, PETITIONER, DECLARE UNDER PENALTY OF PERJURY, PURSUANT TO 28 USC § 1746, THAT THE FOREGOING FACTS AND STATEMENTS ARE TRUE AND CORRECT. I FURTHER DECLARE THAT THE FOREGOING PETITION HAD BEEN PREPARED BY RUBEN GUERRERO, TDCJ-ID #1635715.

EXECUTED ON THIS 14 DAY OF DECEMBER, 20 16.

David Barron

14

# Appendix

Eighth Court of Appeals' Opinion —————————— 1-19



| | | |
|---|---|---|
| DAVID BARRON, | § | No. 08-12-00184-CR |
| Appellant, | § | Appeal from the |
| v. | § | 210th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC# 20120D01101) |
| | § | |

## OPINION

David Barron appeals his conviction for aggravated assault with a deadly weapon. We affirm his conviction as modified.

### BACKGROUND
#### *Factual History*

This case arises from a traffic incident involving victim Robert Sierra and another driver Sierra positively identified as Barron at trial. On December 1, 2011, Sierra was riding his Kawasaki motorcycle along North Loop Road in El Paso, Texas, when he was approached from behind by a maroon Chevrolet Silverado truck traveling at a high rate of speed. Sierra, who was traveling in the left lane, switched over to the right lane on North Loop Road. Sierra then saw the truck pull up next to him in the left lane. According to Sierra, the truck's driver laughed at him, and then "threw the truck" towards him by steering "pretty quickly" into Sierra's lane.

Sierra was forced out of the right lane into the emergency lane on the far right of the road. Sierra testified that if he had not driven onto the shoulder, the truck would have hit him and his motorcycle would have fallen over.

As Sierra drove in the emergency lane, he saw another vehicle ahead of him with its hazard lights flashing. Sierra then wove his way between the vehicle in the emergency lane and the Chevrolet Silverado in the right lane at speeds in excess of the posted 45-mile-an-hour speed limit. The Silverado swerved toward Sierra again. Sierra passed the truck, re-entered the right lane, and decelerated. However, the truck came toward him again from behind, so Sierra sped up and approached the intersection of North Loop Road and Link Street, where Sierra lived. Sierra turned onto Link Street, but lost control of the motorcycle and began to slide before regaining control again. After turning, Sierra failed to notice a truck stopped at a three-way stop sign on the road ahead of him. He braked and "lightly" hit the back of the stopped truck. Meanwhile, the maroon Silverado drove past Sierra on Link Street. The Silverado avoided hitting an oncoming car in the opposite lane, but the Silverado's driver lost control of the truck and hit an SUV parked in front of Sierra's neighbor's house before driving off.

Other State witnesses at trial testified that they either witnessed the accident or else heard loud noises, exited their houses, and witnessed the immediate aftermath of the accident. Sierra's brother Christopher testified that he left the family house after hearing his brother rev his motorcycle engine. According to Christopher, he saw Sierra get on top of the sidewalk and a red or maroon Chevy hit a parked SUV. Christopher stated he was about thirty feet away from the crash. He identified Barron as the driver of the truck that struck the SUV. Neighbor Stephanie Romo testified that she was about to leave her house to go have a cigarette when she heard Sierra revving his motorcycle engine and then a loud boom. She went outside and saw a maroon truck

speed off. She and Christopher Sierra then tried to find the maroon truck, but could not locate it. Robert Sierra testified that he and some family members searched for the truck and later found it parked at a gas station on the corner of North Loop Road and Pendale Street with Barron and another individual standing outside.

Later that night, in connection with his investigation of the Link Street hit-and-run, El Paso Police Department Officer Joel Holguin attempted to conduct a felony stop of a green Yukon, but the vehicle sped off as Officer Holguin approached on foot. Following a chase, the green Yukon crashed into a canal. One suspect ran off and was not arrested. The other occupant of the vehicle, Barron, was arrested at the scene.

Following Barron's arrest, Robert Sierra met police at the EPPD's Mission Valley Substation. EPPD Officer Adrian Arellano then conducted a "one-on-one," which he described as an identification procedure in which police "take the victim at a safe distance, either in a vehicle or behind the light so the subject cannot see him and he sees . . . whether he recognizes him or not." In this case, officers placed a spotlight on Barron. Sierra, who was standing thirty yards away, viewed Barron through binoculars and positively identified Barron as the driver of the maroon truck.

At trial, the defense presented testimony from Martha Barranco. She testified that she owned a maroon-colored 1999 Chevrolet Silverado, and that she loaned her husband Antonio the vehicle on December 1, 2011. She admitted that Antonio was friends with Barron, but denied giving Barron permission to use her truck. She did not see Barron drive her truck on December 1. She further testified that her husband Antonio was injured in an accident on December 1.

*Procedural History*

3

Barron was indicted on one count of aggravated assault with a deadly weapon, with the indictment alleging he used a motor vehicle in a deadly manner. Following trial, Barron was convicted of the charged crime. He filed a motion for new trial and a notice of appeal. The trial court initially denied Barron's motion for new trial. After the thirty-day primary period for filing a motion for new trial expired, but still within the trial court's seventy-five-day plenary period, Barron submitted, over State objection, a "motion to reconsider" the new trial motion that raised new grounds not previously submitted during the thirty-day primary period. The trial court then granted Barron's motion for new trial. The State appealed, and we abated Barron's appeal pending the outcome of the State's appeal. We ultimately reversed the new trial order and reinstated Barron's conviction, holding that the State's objection to the untimely-filed new grounds raised in the motion to reconsider prevented the trial court from considering those arguments in reaching its decision during the plenary period. *State v. Barron*, No. 08-12-00245-CR, 2014 WL 505497 (Tex.App.--El Paso Feb. 7, 2014, pet. ref'd)(not designated for publication)(State's appeal).

We now consider the merits of Barron's appeal.

## DISCUSSION

In five issues, Barron raises points on jury charge error, his purported exclusion from trial, and legal sufficiency. Because it is a potential rendition point, we begin with legal sufficiency.

### *A.*
### *Accomplice Witnesses: Definition and Legal Sufficiency Analysis*

In Issue Four, Barron contends that the evidence is legally insufficient to support his conviction.[1] Specifically, Barron argues that Robert Sierra should be considered an accomplice

---

[1] The State asks us to read Issue Four as being waived as multifarious. We decline to do so.

4

witness in this case because he "encouraged" Barron's reckless behavior by driving his motorcycle at a high speed and breaking multiple traffic laws in the process. In essence, Barron alleges he and Sierra were joint parties in an illegal street race, rendering Sierra's testimony unreliable. Barron then asserts that under the accomplice witness rule, Sierra's in-court identification of Barron, standing alone, cannot support Barron's conviction, nor can the testimony of any other witness corroborate Sierra's identification of Barron as the man in the maroon Chevrolet truck. Tied in with Sierra's purported accomplice status is Issue Three, in which Barron argues the trial court should have also submitted an accomplice witness instruction to the jury naming Sierra as his accomplice.

We disagree both with Barron's characterization of Sierra as an "accomplice" and with his conclusion that the evidence supporting conviction is insufficient.

### Standard of Review

On legal sufficiency review, we assess all trial evidence "in the light most favorable to the prosecution," to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [Emphasis omitted]. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *citing Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We review all record evidence in making this determination—direct or circumstantial, properly admitted or not. *Clayton*, 235 S.W.3d at 778. "Each fact need not point directly and independently to the guilt of the Appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007).

We measure legal sufficiency based on the statutory elements of the offense as modified by the allegations set out in the indictment. *Malik v. State*, 953 S.W.2d 234, 239 (Tex.Crim.App.

5

1997).

In this procedural posture, we are not permitted to sit as "thirteenth jurors" and substitute our judgment for that of the fact finder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex.Crim.App. 2010), *Goodman v. State*, 66 S.W.3d 283, 286 n.4 (Tex.Crim.App. 2001). Even so, we act as a procedural failsafe against irrational verdicts, and we may reverse a conviction on legal sufficiency grounds where no rational juror could find guilt beyond a reasonable doubt based on the evidence presented at trial. *Clayton*, 235 S.W.3d at 778. This encompasses both situations in which the State has failed to prove an essential element of the crime as a matter of law and situations in which some evidence exists on every element, but no reasonable person could convict in light of the state of evidence as a whole, even when viewed most favorably to the prosecution. *See Jackson*, 443 U.S. at 320, 99 S.Ct. at 2789 (constitutional legal sufficiency standard in criminal cases higher than "mere modicum" evidence standard); *Brooks v. State*, 323 S.W.3d 893, 906-07 (Tex.Crim.App. 2010).

A separate, statutory standard of review for legal sufficiency is also implicated when the State presents the testimony of an accomplice witness. *See* TEX.CODE CRIM.PROC.ANN. art. 38.14 (West 2005); *see also Taylor v. State*, No. 08-12-00143-CR, 2014 WL 792114, at *3 (Tex.App.--El Paso Feb. 26, 2014, no pet.)(not designated for publication). "In assessing an evidentiary challenge under the accomplice witness statute, we first eliminate the accomplice's live, sworn testimony at trial from consideration and then review the remaining evidence in the light most favorable to the verdict to determine whether a rational juror would believe the evidence 'tends to connect the defendant' to the charged crime." *Taylor*, 2014 WL 792114, at *3.

"An accomplice is someone who participates with the defendant before, during, or after

the commission of a crime and acts with the required culpable mental state." *Druery v. State*, 225 S.W.3d 491, 498 (Tex.Crim.App. 2007). "[C]omplicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness." *Id.* "In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser-included offense of that charge, the witness is not an accomplice witness as a matter of law." *Id.*; *accord Quijano v. State*, No. 14-10-00108-CR, 2010 WL 5132588, at *2 (Tex.App.--Houston [14th Dist.] Dec. 14, 2010, pet. ref'd)(mem. op., not designated for publication)(in aggravated assault trial, woman who agreed to commit a robbery with defendant before he assaulted her was not defendant's "accomplice" because the charge at trial was aggravated assault, not robbery, and she could not be an accomplice to her own assault).

## Analysis

At the heart of Barron's arguments in Issues Three and Four is the allegation that he and Sierra were street-racing each other at the time of the aggravated assault. Because street-racing is illegal, Barron maintains Sierra's testimony should be excluded from our analysis on the basis that both he and Sierra were allegedly engaged in a shared criminal activity. Barron also urges us to reverse his conviction because the trial court, failing to recognize Sierra's status as an accomplice, did not submit an accomplice witness instruction for the jury's consideration.

We are not convinced Barron's contention that he and Sierra were street-racing is borne out by the record before us. Even so, assuming for argument's sake that both Barron and Sierra were engaged in illegal street-racing, the charge in this case was aggravated assault, not street-racing, and Sierra could not become an accomplice to his own aggravated assault by racing with Barron. *See Quijano*, 2010 WL 5132588, at *2 (fact that assailant and victim agreed to commit a

7

robbery together did not make assault victim her assailant's "accomplice" for purposes of the assault case, even where her assault arose during the robbery). Simply put, even if what Barron says is true, Sierra would not fit the definition of an accomplice for purposes of the accomplice witness statute, as a separate crime—aggravated assault—arose during the course of a purported joint criminal episode between co-conspirators. *Quijano,* 2012 WL 5132588, at *2. Since Barron is not an accomplice witness to the aggravated assault, the trial court did not err by refusing to submit an accomplice witness instruction. Issue Three is overruled. *See Ferrel v. State,* 55 S.W.3d 586, 591 (Tex.Crim.App. 2001)(jury instruction required only if issue is raised by some evidence).

Additionally, because Sierra was not Barron's accomplice, the special legal sufficiency standard for accomplice witness testimony does not apply, and we may give Sierra's testimony full weight. Both Sierra and his brother Christopher identified Barron as the man in the maroon Chevrolet truck. Barron maintains that Sierra's testimony is unworthy of credence because Sierra identified Barron as the driver of the maroon truck from a distance through binoculars after police walked him into a spotlight. Likewise, Christopher's testimony should be disbelieved because he was only able to see the driver of the truck for a few brief moments at night. It is for the jury to decide how much weight to given that testimony, particularly in light of the fact that Sierra also saw Barron while the aggravated assault occurred. We cannot say based on the record presented that no rational juror could have found Barron guilty. The evidence presented is legally sufficient.

Issue Four is overruled.

### B.
### *Trial in Absentia*

In Issue Five, Barron urges us to reverse his conviction because the trial court wrongfully

8

tried him in absentia during portions of voir dire. Specifically, Barron contends his right to be present was violated when the trial court refused to allow him to stand at the bench with trial counsel during bench conferences in which the judge examined individual jurors' qualifications and exemptions outside the hearing of the remaining veniremen. We conclude that error, if any, was harmless.

A criminal defendant has the constitutional right to be present at all stages of trial, including voir dire. *Bledsoe v. State*, 936 S.W.2d 350, 352 (Tex.App.--El Paso 1996, no pet.). A trial court commits error by hearing veniremen's requests to be excused while the defendant is "absent from the courtroom." *Weber v. State*, 829 S.W.2d 394, 396 (Tex.App.--Beaumont 1992, no pet.). Barron cites no authority for the proposition that his exclusion from bench conferences dealing with juror qualifications and exemptions constituted being tried in absentia, given that he was ostensibly outside the hearing of the bench conference but still present in the courtroom while the trial court questioned potential jurors. Assuming arguendo that Barron had the right to be present at the bench during this stage of voir dire, his exclusion from this process was harmless. "An appellant is harmed by a constitutional error unless after reviewing the record, the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *Routier v. State*, 112 S.W.3d 554, 577 (Tex.Crim.App. 2003); TEX.R.APP.P. 44.2.

In this case, the trial court, over objection, excluded Barron three times from bench conferences after Barron's counsel specifically requested he be present as the trial court examined the veniremen, instead requiring Barron to sit at the counsel table. As judicially noticed by the trial court, the distance between counsel table and the bench was less than twenty feet. During the first bench conference, the judge assessed several prospective jurors'

9

qualifications, including the ability to speak English, and one juror was disqualified on the basis of a theft conviction. Barron's counsel did not question these prospective jurors or object to their exclusion. During the second bench conference, the trial court inquired about exemptions, and seven jurors were excused without objection for medical, family, or educational reasons. Again, Barron's counsel did not question these jurors or object. Finally, at the last bench conference, the judge asked the venire if any members had any other excuses they would like to raise. The judge did not excuse any potential jurors after this conference, and Barron's counsel did not question any jurors. After the three bench conferences, the State and Barron both conducted voir dire. The trial court struck jurors who did not qualify, excused others, allowed the parties to exercise peremptory challenges, and then announced who would serve on the jury. Barron did not object to the seating of the jury.

Courts in similar cases have found that appellants were not harmed. *See Jasper v. State*, 61 S.W.3d 413 (Tex.Crim.App. 2001)(any error in excusing two jurors for valid non-economic reasons before defendant entered courtroom was harmless beyond a reasonable doubt); *See Adanandus v. State*, 866 S.W.2d 210, 220 (Tex.Crim.App. 1993)(defendant's exclusion from in-chambers meeting regarding presence of video cameras during voir dire was harmless; counsel's arguments were consistent with previous written motion, "Appellant's assistance was not needed in order to further his defense on the issues discussed[,]" counsel made bill of exceptions when request to exclude cameras was denied, and "[n]o decisions were made by appellant's attorney regarding jury shuffle or the use of strikes and no other matters of substance were discussed"); *Fulmer v. State*, 401 S.W.3d 305, 316 (Tex.App.--San Antonio 2013, pet. ref'd), *cert. denied*, 134 S.Ct. 436, 187 L.Ed.2d 293 (2013)(defendant's right to be physically present was violated when judge commenced juror qualification process in defendant's absence, but error was

10

harmless beyond a reasonable doubt). We conclude beyond a reasonable doubt that Barron's placement at counsel's table during voir dire did not harm him based on the record before us.

Issue Five is overruled.

## C.
### *Jury Charge Errors*

Barron's remaining issues deal with jury charge errors. We address them in turn.

### Standard of Review

A defendant is entitled to a jury instruction that is raised by the evidence. *Ferrel*, 55 S.W.3d at 591. We review jury charge error claims under a two-step process. *State v. Sanchez*, 393 S.W.3d 798, 802 (Tex.App.--El Paso 2012, pet. ref'd), *cert. denied* 134 S.Ct. 221, 187 L.Ed.2d 144 (2013). First, we must determine whether error, in fact, exists. If so, we then ascertain whether the error was harmful. *Id.* The level of harm necessary to justify reversal of a criminal conviction depends on whether the appellant objected to the charge at trial. *Id.* If the defendant did object, we will reverse on a showing of "some harm." If the defendant failed to object, we will only reverse the conviction upon a showing of "egregious harm." *Id.*

### 1.
### Accomplice Witness Instruction

In Issue Three, Barron avers that the trial court erred by failing to include an instruction on the accomplice witness rule. As we stated previously in the Legal Sufficiency section of this opinion, victim Robert Sierra was not an "accomplice" to his own aggravated assault by Barron. *Quijano*, 2010 WL 5132588, at *2. As such, the trial court did not err by failing to include an accomplice witness instruction. *See Ferrel*, 55 S.W.3d at 591 (defendant only entitled to jury instruction if evidence raises issue). Issue Three is overruled.

### 2.
### Denial of Assault Charge

11

In Issue One, Barron maintains that the trial court erred by failing to grant an instruction on the lesser-included offense of assault by threat. We disagree.

"Courts apply the *Aguilar/Rousseau* test to determine whether an instruction on a lesser-included offense should be given to the jury." *Cavazos v. State,* 382 S.W.3d 377, 382 (Tex.Crim.App. 2012). The *Aguilar/Rosseau* test has two elements. "First, the court determines if the proof necessary to establish the charged offense also includes the lesser offense." *Id.* "If this threshold is met, the court must then consider whether the evidence shows that if the Appellant is guilty, he is guilty only of the lesser offense." *Id.* The State concedes that assault by threat is a lesser-included offense of aggravated assault by threat, satisfying the first *Aguilar-Rousseau* factor. The only outstanding question before the Court is whether the jury could have rationally found Barron guilty only of assault by threat based on the evidence presented.

The difference between assault by threat and aggravated assault by threat is the use of a deadly weapon. Thus, Barron was entitled to receive the lesser-included instruction if the jury could have found that Barron did not use or exhibit a deadly weapon during the assault, or that he used his car to threaten Sierra in a non-deadly manner. *See Perry v. State,* No. 06-13-00051-CR, 2014 WL 3973929, at *9 (Tex.App.--Texarkana Aug. 15, 2014, pet. ref'd)(mem. op., not designated for publication)(holding that, to show entitlement to assault by threat instruction, "there must be some evidence suggesting that [a defendant] did not use or exhibit a deadly weapon in the commission of the assault").

"A defendant is entitled to an instruction on a lesser-included offense if some evidence from any source raises a fact issue on whether he is guilty of only the lesser, regardless of whether the evidence is weak, impeached, or contradicted." *Cavazos v. State,* 382 S.W.3d 377, 383 (Tex.Crim.App. 2012). Barron argues that there is more than a scintilla of record evidence

showing the truck was not used as a deadly weapon under the circumstances. As proof, he points to the fact that Sierra allegedly followed the truck after almost being forced off the road and posits that if Sierra had actually thought that his life was actually in danger, he would not have pursued the truck. Thus, according to Barron, we may take Sierra's pursuit of the truck as some evidence that Sierra did not subjectively believe the truck was being used in a deadly manner, which would justify submission of a simple assault charge.

The record does not appear to bear out Barron's contention that Sierra pursued the truck. In any event, we disagree that we must measure the deadliness of Barron's threatening conduct through the victim's personal perceptions. "[A] victim's subjective perception of the threat is not dispositive in an aggravated assault by threat case. Instead, the operative question is whether the defendant's conduct would be perceived as objectively threatening under the circumstances." *Montejano v. State*, No. 08-12-00235-CR, 2014 WL 4638911, at *6 (Tex.App.--El Paso Sept. 17, 2014, no pet.)(not designated for publication).

From an objective standpoint, a truck may be perceived as a deadly weapon if, as in this case, the driver repeatedly swerves the truck at a motorcycle while both vehicles are moving at high speeds; that conduct would suggest to a reasonable person that the truck is being used to cause death or serious bodily injury. However, we fail to see, from an objective standpoint, how there is more than a scintilla of evidence showing that a reasonable person would perceive the use of the truck under those circumstances as *anything but* a way to threaten to inflict death or serious bodily injury on Sierra. Our sister courts have reached the same conclusion in addressing similar cases. *See, e.g., Dobbins v. State*, 228 S.W.3d 761, 768 (Tex.App.--Houston [14th Dist.] 2007, pet. dism'd as untimely)(holding that instruction was not warranted where driver drove vehicle toward police officer at five to ten miles per hour because even at that speed vehicle was

"capable of causing death or serious bodily injury"). Because there is no evidence suggesting that Barron could be found guilty of simple assault by threat rather than aggravated assault by threat under the circumstances, the trial court did not err by refusing to instruct the jury on simple assault by threat.

Issue One is overruled.

### 3.
### Judicial Comment on Weight of Evidence

In Issue Two, Barron contends that the trial court improperly commented on the weight of the evidence by including an erroneous jury charge. The specific language Barron challenges is as follows:

> A fact may be established by direct evidence or circumstantial evidence or both. *A fact is established by direct evidence* when proved by documentary evidence or by witnesses who saw the act being done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved. [Emphasis added].

Barron asserts that the italicized language stating that a "fact *is* established by direct evidence when proved by . . . witnesses who saw the act being done or heard the words spoken" wrongfully gave the jury the impression that the State's witnesses were inherently trustworthy.

The Texas Code of Criminal Procedure provides that "the judge shall . . . deliver to the jury . . . a written charge . . . not expressing any opinion as to the weight of the evidence . . . ." TEX.CODE CRIM.PROC.ANN. art. 36.14 (West 2007). A jury charge that correctly sets out the law may still be improper if it nevertheless comments on the weight of the evidence. *See Batts v. State*, No. 11-10-00156-CR, 2012 WL 2469546, at *6 (Tex.App.--Eastland June 28, 2012, pet. ref'd)(mem. op., not designated for publication). In *Brown v. State,* the Texas Court of Criminal Appeals set a three-point spectrum for determining when instructions constitute impermissible judicial comment on the weight of the evidence. *See* 122 S.W.3d 794, 799-801 (Tex.Crim.App.

14

2003). "On the far end of the 'improper-judicial-comment' scale is a comment or instruction that states a mandatory presumption and thereby violates due process." *Brown*, 122 S.W.3d at 799. "[T]o meet due process, any such instruction must be permissive rather than mandatory ('you may infer' rather than 'the law presumes'), and there must be a reasonably tight logical fit between the basic facts proved and the ultimate fact inferred." *Id.* at 799.

"Somewhere in the middle of the 'improper-judicial-comment' scale are instructions on non-statutory presumptions or 'vehicles employed to review the sufficiency of evidence.'" *Id.* at 799. While a trial or appellate court may apply presumptions in measuring evidence, "the jury cannot be told of that presumption or rule." *Id.* at 800. Such an instruction is an improper comment on the weight of the evidence. *Id.* Finally, at the near end of the improper judicial comment spectrum, a trial court cannot instruct on inferences that unreasonably draw attention to certain evidence. *Id.* at 800-01. "[A] court's jury instruction could violate article 36.14 . . . [by] obliquely or indirectly convey some opinion on the weight of the evidence by singling out that evidence and inviting the jury to pay particular attention to it." *Id.* at 801.

Barron's argument bleeds the distinctions between the three categories together, and he makes points related to all three types of prohibited evidence. As such, we parse the instruction by category. First, Barron maintains the instruction creates a mandatory, irrebuttable presumption that the State's witnesses are inherently credible by stating that a fact "is" established by eyewitness testimony. We disagree that the language in this charge creates a mandatory presumption favor of the State. In the first place, the charge never mentions the State, it merely refers to eyewitnesses. In the second place, the next paragraph of the change dispels any linguistic ambiguity over whether the word "is" is simply used as a neutral copula linking one half of the sentence to another or whether it is instead an implicit command to the jury to

15

assume a fact exists:

> *You are the exclusive judges of the facts proved, of the credibility of the witnesses, and of the weight to be given the testimony*, but you are bound to receive the law from the Court, which is herein given to you, and be governed thereby. [Emphasis added].

This portion of the charge clarifies that the jury is ultimate the decider of fact, and can either accept or reject the account of any witness, including a State's witness. When read together with the portion of the charge Barron challenges, it becomes clear to a reasonable reader that "is" is not a command—eyewitness testimony *is* direct evidence, but the jury is still free to believe the witness or not. As such, there is no "far end" mandatory presumption at issue here. Likewise, there is nothing in the charge that tells the jury to apply a non-statutory presumption, meaning that there is no "middle" spectrum issue, either. We are left with a near-spectrum issue: did the charge unnecessarily call attention to certain evidence?

In *Batts*, our sister court in Eastland confronted a jury instruction on the near end of the spectrum which stated: "Circumstantial evidence can corroborate the testimony of an accomplice witness." 2012 WL 2469546, at *6. The Eastland Court, relying on *Brown*, held that the instruction was "marginally" a comment on the weight of evidence and thus improper; it did not "pluck out" particular pieces of trial evidence and offer them to the jury, but it did highlight "a certain type of evidence—circumstantial evidence" and "focus the jury's attention on that type of evidence as corroboration for accomplice testimony." *Batts*, 2012 WL 2469546, at *6. By doing so, the trial court wrongly gave the jury an impression that circumstantial evidence could have existed to support the State's position.

Barron argues that at the very least, this instruction was erroneous because, like the *Batts* instruction, it improperly drew the jury's attention to certain types of evidence: namely, eyewitness and documentary evidence. Assuming that Barron is correct and that this charge

16

constitutes an improper comment under the logic of *Batts*, Barron cannot establish that this error harmed him. The instruction, much like the instruction in *Brown*, "is mild, neutral, and an obvious common-sense proposition[,]" and Barron cannot establish that he was harmed by it. *Brown*, 122 S.W.3d at 803; *cf. Batts*, 2014 WL 2469546, at *6.

Issue Two is overruled.

### D.
### *State's Modification Request: Failure to Include Deadly Weapon Finding in Judgment*

In footnote 20 of its brief, the State draws our attention to the fact that although the jury's verdict included a finding that Barron used a motor vehicle as a deadly weapon in the commission of this offense, the "Findings on Deadly Weapon" portion of the judgment of conviction contains an entry that states "N/A." The State then points us to TEX.R.APP.P. 43.2(b) and related authority and asks us to use our power to modify and affirm judgments to insert the omitted deadly weapon finding back into the judgment of conviction.

Although we acknowledge the existence of this power, we pause to note that the Texas Court of Criminal Appeals has recently clarified that, at least in straight bench trials, a trial judge has the discretionary authority to *decline* to enter a deadly weapon finding even after finding a defendant guilty of a deadly-weapon offense. *See Guthrie-Nail v. State*, No. PD-0125-14, 2015 WL 5449642, at *3-*4 (Tex.Crim.App. Sept. 16, 2015)(reh'g granted). In that case, the trial court accepted a plea deal in which the defendant implicitly admitted to using a deadly weapon during an offense. The trial court's original conviction judgment listed "N/A" under the deadly weapon finding section, but the trial court later changed that section to reflect an affirmative deadly weapon finding. The defendant objected to the change; the State asked the appellate courts to affirm the change as a nunc pro tunc revision. *Id.* The Court of Criminal Appeals remanded for a hearing to determine whether the trial court initially exercised its ability to

17

decline to enter a deadly weapon finding (in which case reformation to include the finding would be inappropriate), or whether the trial court had actually made a deadly weapon finding that had been erroneously omitted and thus was properly subject to correction through a judgment nunc pro tunc. *Guthrie-Nail*, 2015 WL 5449642, at *5. In light of the holding in *Guthrie-Nail*, we must exercise caution before using our modification power to include an omitted deadly weapon finding, and should first determine whether the failure to include a deadly weapon finding was truly a clerical error and not a conscious decision by the trial court.

In this case, use of the modification power is appropriate, since the record makes clear that the omission of the deadly weapon finding was a clerical error and not an attempt by the trial court to enter a quasi-judgment non obstante veredicto as to the deadly weapon finding. During the pronouncement of judgment hearing, the trial court stated, in relevant part:

> THE COURT: So what I'm going to do is that I'm going to--based upon the evidence and the verdict of the jury I'm going to enter a[n] affirmative finding on the use of a deadly weapon in the Court's judgment, which is going to affect his ability to be eligible for parole, and that will be part of the judgment of the Court and the evidence supported based on the verdict.

Because it is readily apparent from the record that the trial court intended to enter a judgment that conformed with the jury's verdict, and because the judgment of conviction omits the jury's deadly weapon finding that the trial court orally pronounced, we will modify the judgment to include the deadly weapon finding.

## CONCLUSION

Barron has failed to demonstrated reversible error. We modify the judgment of conviction to reflect an affirmative deadly weapon finding and affirm the judgment as modified. TEX.R.APP.P. 43.2(b).

18

August 12, 2016

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)

19

Ruben Guerrero
TDCJ-ID #1635715
Alfred. D. Hughes Unit
Route 2, Box 4400
Gatesville, Tx 76597

Court of Criminal Appeals
Supreme Court Bldg.
201 West 14th St.
Austin, Texas 78701






ADDITIONAL OUNCE

Austin TX 78710
FRI 16 DEC 2016 PM